IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| Orexigen Therapeutics, Inc.,[1] | ) |
| | ) Case No. 18-10518 (KG) |
| Debtor. | ) |
| | ) **Re: Docket No. 70** |

**OBJECTION OF THE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OREXIGEN THERAPEUTICS, INC., TO THE DEBTOR'S MOTION FOR (I) AN ORDER PURSUANT TO SECTIONS 105, 363, 364, 365 AND 541 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 6004, 6006 AND 9007 AND DEL. BANKR. L.R. 2002-1 AND 6004-1 (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTOR; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT REJECTION OF DESIGNATED EXECUTOR CONTRACTS AND UNEXPIRED LEASES; (C) SCHEDULING THE AUCTION AND SALE HEARING; (D) APPROVING FORMS AND MANNER OF NOTICE OF RESPECTIVE DATES, TIMES, AND PLACES IN CONNECTION THEREWITH; AND (E) GRANTING RELATED RELIEF; (II) AN ORDER (A) APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF CLAIMS, LIENS, AND ENCUMBRANCES; AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT, ASSIGNMENT OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) CERTAIN RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed counsel, hereby submits this objection (the "Objection") to the *Debtor's Motion for (I) An Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures and Bid Protections for the Sale of Substantially All Assets of Debtor; (B) Approving Procedures for the Assumption and Assignment Rejection of Designated Executor*

---

[1] The last four digits of the Debtor's federal tax identification number are 8822. The Debtor's mailing address for purposes of this Chapter 11 Case is 3344 North Torrey Pines Court, Suite 200, La Jolla, CA 92037.

*Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice Of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief; (II) an Order (A) Approving the Sale of the Debtor's Assets Free and Clear of Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment, Assignment or Rejection of Executory Contracts and Unexpired Leases; and (III) Certain Related Relief* [Docket No. 70] (the "Motion").[2]

## **OBJECTION**

As the Court is aware, the Committee was formed just over two weeks ago. Since being appointed on March 27, 2018, the Committee and its professionals have been forced to delve into the Debtor's business operations on an extremely expedited timeframe, faced with the Debtor's immediate need for financing, as well as a proposed sale of all of the Debtor's assets.

The Motion, as filed, included a number of terms that are potentially detrimental to unsecured creditors including an abbreviated marketing timeline and expansive protections for a potential stalking horse bidder. Importantly, the Debtor has taken the position that "this sales process will be different than the previous ones" because, among other things, (i) it has a new business plan that achieves greater profitability with far less administrative expense, (ii) it now has patent protection assured through 2030, where before its patents had been challenged, and (iii) it has certainty around the FDA final approval process, and the cost thereof, at comparatively very low numbers. As a result, when this new information will be provided, if it has been provided, and to whom it has been or may be provided, could not be more important to any competent review of the proposed timing and process. Yet, the Committee has not been provided this information, and, therefore, is unable to assess whether the Debtor's proposal is

---

[2] Capitalized terms used but not otherwise defined in this Objection shall have the meanings set forth in the Motion.

sensible, feasible, and in the best interests of the estate. Until this very basic evidence is provided (even on a professional eyes only basis), there is no possibility of the Debtor satisfying its' burden for approval.

Immediately following its appointment, the Committee raised its concerns regarding the Motion with the Debtor and requested, among other things, the following information with respect to both prior marketing efforts:

- Information regarding and identification of the contacted parties;
- Information regarding the parties who signed NDAs;
- Information regarding the parties who entered into indications of interest;
- Information regarding the dates of management meetings held (and whether telephonic or in person) and parties participating;
- Information regarding the parties who visited the dataroom established for diligence purposes;
- Information regarding the parties who have been or will be contacted post-petition;
- The revised business plan to accompany the sales materials; and
- The revised confidential investment memorandum.[3]

Unfortunately, to date, the Committee has received minimal information concerning the sales process, including none of the items requested above. To the extent that the Debtor has provided requested information to the Committee, the slow flow of information and tightly compressed time frame have made it impossible for the Committee to intelligently determine whether a sale of the Debtor's assets – either on the terms and timeframe proposed by the Motion

---

[3] The Debtor provided the Committee with the CIM for the pre-petition sale process run by Perella.

or otherwise – is in the best interest of the unsecured creditors, or whether the parties would be better off focusing their efforts on other exit strategies.[4] This lack of transparency is especially important where, as here, the Debtor claims that the playing field has dramatically changed since the failed pre-petition sales processes, the Debtor has reached the conclusion that only a sale exit strategy makes sense, and, as announced before this Court earlier this week, there is now very close alignment between the identity of the DIP Lenders and the prepetition secured creditors.[5]

Recognizing the need for additional time, in connection with discussions among the Committee, the Debtor, and the DIP Lenders concerning the DIP Facility, the Committee was able to negotiate a short extension of the proposed sale timeline as follows:[6]

| Event | Original Deadline | Current or [Proposed] Deadline |
| --- | --- | --- |
| Bid Procedures Hearing | April 5, 2018 | April 18, 2018 |
| Bid Deadline | May 21, 2018 | June 4, 2018 (per DIP Order) |
| Auction | May 24, 2018 | [Proposed: no earlier than June 7, 2018 – three days after bid deadline] |
| Sale Objection Deadline | Not set | |
| Assignment Objection Deadline | April 30, 2018 | [Proposed: no earlier than May 18, 2019][7] |
| Sale Hearing (no later than) | June 5, 2018 | No later than June 18, 2018 |
| Deadline to Close Proposed Sale Transaction | July 2, 2018 | |

---

[4] The Committee notes the Debtor has a large number of NOLs which may, under the right conditions, be enticing to third parties. The Bid Procedures, however, require a bidder to purchase substantially all of the Debtor's assets, eliminating the possibility of an alternative sale structure that could maximize the value of these or other assets. The rush to approve a sale process has left the Committee no time to evaluate these or other potential exit strategies.

[5] Obviously, the Committee's investigation into the prepetition secured claims has only just begun.

[6] The Committee also reserved the right to seek further extensions of the various deadlines.

[7] Although the parties did not agree to an extension of the Assignment Objection Deadline, it should be continued to no earlier than May 18, 2018 in order to give the relevant contract parties sufficient notice of the proposed assumption, assignment, or rejection. Moreover, the Committee questions the purpose of this deadline, given that there is currently no stalking horse bidder and the deadline to submit bids in May 21, 2018. It is unlikely that the Debtor will know in advance of the bid deadline what, if any, contracts a potential purchaser will seek to assume and assign. Requiring lease and contract counterparties to object prior to the bid deadline is unreasonable as it forces these parties to object without knowing any of the possible bidders.

But the Committee hoped that its very reasonable requests would have received responses by now. Yet, nothing material has been produced.

Given the lack of information, the Committee has no means of determining whether the timeline – even with the extended deadlines – is sufficient. Therefore, the Committee requests that the Court extend the proposed deadlines for a period of thirty days to allow the Committee to evaluate the proposed sale process, as well as the possibility that another exit strategy would be of greater benefit to the unsecured creditors.

The Committee also has significant concerns about the protections being offered to a potential stalking horse bidder. These protections are above-market, including a break-up fee of 5% of the proposed purchase price, when the median break-up fee is three percent (3%), and a two million dollar ($2,000,000) expense reimbursement, when the expenses allowed in other matters suggest that this is at least fifty percent (50%) too high.

These protections are especially unreasonable if the stalking horse bidder is one (or all) of the Debtor's DIP Lenders, as such parties will have performed the majority of the necessary diligence in connection with the DIP Facility and may attempt to credit bid. Indeed, given their pre-existing involvement with the Debtor, such parties do not need to be "wooed" to the process through stalking horse benefits. Adding staking horse protections for lenders with an inside track will chill bidding, to the detriment of the estate (but very possibly to the benefit of lenders employing a loan-to-own strategy).

Unless and until the Committee is informed that there is a stalking horse bidder and the identity of such party, as well as provided the important information that it has requested, the Committee has no way of knowing whether the proposed sale process and bid protections are

reasonable. Therefore, the Committee objects to the proposed sales process and bid protections.

The Committee reserves the right to supplement this Objection as appropriate.

Dated: April 13, 2018
Wilmington, Delaware

ELLIOTT GREENLEAF, P.C.

/s/ Rafael X. Zahralddin-Aravena
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Eric M. Sutty (DE Bar No. 4007)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: ems@elliottgreenleaf.com

-and-

**IRELL & MANELLA LLP**
Jeffrey M. Reisner *(admitted pro hac vice)*
Michael H. Strub, Jr. *(admitted pro hac vice)*
Kerri A. Lyman *(admitted pro hac vice)*
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone: (949) 760-5242
Facsimile: (949) 760-5200
Email: jreisner@irell.com
Email: mstrub@irell.com
Email: klyman@irell.com

*Proposed Counsel to the Official
Committee of Unsecured Creditors*