IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OREXIGEN THERAPEUTICS, INC., | Case No. 18-10518 (KG) |
| Debtor.[1] | **Objections Due:**<br>**Hearing Date:** |

## DECLARATION OF ERIN BEESLEY
## IN SUPPORT OF MOTION FOR AN ORDER DETERMINING
## THAT McKESSON IS ENTITLED TO THE DISPUTED FUNDS

I, Erin Beesley, respectfully declare under penalty of perjury as follows:

1.  I am over the age of eighteen years. For more than 10 years, I was employed at US Oncology, which in 2010, was acquired by McKesson Corporation ("**McKesson Corp.**" and together with McKesson Patient Relationship Solutions ("**MPRS**"), a business unit of McKesson Specialty Arizona, Inc., a wholly owned subsidiary of McKesson Corp. "**McKesson**"). I am now a Senior Director, Financial Planning and Analysis. In that capacity and during that time, I have been primarily responsible for the management of a number of the financial and accounting aspects of the business relationship between MPRS and Orexigen Therapeutics, Inc. (the "**Debtor**") particularly with respect to what is referred to as the "**LoyaltyScript® Program**" and the distribution and the Debtor's sales efforts with respect to Contrave® (the "**Product**"), a drug approved by the Food and Drug Administration for chronic weight management in certain adults.

2.  I make this declaration in support of the motion filed by McKesson seeking, among other things, an order determining McKesson's entitlement to certain "Disputed Funds." The following facts are known to me to be true of my own personal knowledge, except only

---

[1] The last four digits of the Debtor's federal tax identification number are 8822. The Debtor's mailing address for purposes of this Chapter 11 Case is 3344 North Torrey Pines Court, Suite 200, La Jolla, CA 92037.

1

those facts set forth on information and belief, and as to those facts, I am informed and believe them to be true. If called as a witness, I could and would testify competently to the facts set forth in this declaration.

3. I am familiar with an agreement (as amended, the "**Distribution Agreement**") that defines the terms and conditions pursuant to which McKesson would distribute the Debtor's Product. The Core Distribution Agreement by and between McKesson and the Debtor, was made effective as of July 1, 2016, and amended from time to time. Under the Distribution Agreement, McKesson was authorized to operate as a distributor of healthcare products (defined in the Distribution Agreement as "the Product(s)") for the Debtor and provide certain core services related thereto.

4. In the Distribution Agreement, the parties agreed that McKesson Corp. had certain rights to "set-off, recoup and apply amounts" owed between the Debtor and its affiliates on the one hand, and McKesson and its affiliates on the other. Specifically, the parties agreed:

> "VII. General
> . . .
> Notwithstanding anything to the contrary in this Agreement, each of McKesson Corporation and its affiliates is hereby authorized to set-off, recoup and apply any amounts owed by it to Manufacturer's [the Debtor's] affiliates against any all [sic] amounts owed by Manufacturer or its affiliates to any of McKesson Corporation or its affiliates, without prior written notice[.]"

5. I am also familiar with a series of agreements McKesson and the Debtor entered into an agreement entitled the "Master Service Agreement" entered into on or about July 15, 2016 entitled (the "**Master Services Agreement**") pursuant to which McKesson is to coordinate a program that facilitates the distribution and processing of the Debtor's extension of discounts off of the Debtor's pharmaceutical drug products through retail pharmacies (the "**LoyaltyScript® Program**"). The Master Services Agreement was amended several times: (i) the "First

2

Amendment Master Service Agreement" dated as of October 10, 2016; (ii) the Second Amendment Master Service Agreement" dated as of January 20, 2017; and (iii) the "Third Amendment Master Services Agreement" dated as of October 2, 2017.

6. On April 11, 2018, an order was entered [D.I. 176] that approved the McKesson Stipulation attached as Exhibit A thereto (the "**April Stipulation**") that addressed, among other things, the Debtor's obligations under the Master Services Agreement related to the processing of the Debtor's LoyaltyScript® Program.[2]

7. The LoyaltyScript® Program is further described in "Schedule A1—Schedule of Services for LoyaltyScript® Program for Contrave®" signed by the Debtor and MPRS and dated on or about July 25, 2016 ("**Schedule A1**"). In turn, Schedule A1 attaches a "Schedule of Fees" (the "**Fee Schedule**"). The prefatory paragraph of Schedule A1 provides:

> "This Schedule of Services A1 described the Services to be performed by McKesson . . . and [the Debtor] for the LoyaltyScript® Program for Contrave (the "Program"). This Schedule of Services and the attached Schedule of Fees (the "Schedule") are pursuant to the Master Services Agreement . . ."

As a result, both Schedule A1 and the Fee Schedule were entered into pursuant to the Master Services Agreement. Schedule A1 was amended several times: (i) the "First Amendment to Schedule of Services for LoyaltyScript® Program for Contrave®" dated on or about January 8, 2017; and (ii) the "Second Amendment to Schedule of Services for LoyaltyScript® Program for Contrave®" dated on or about November 16, 2017.

8. The Master Services Agreement and the Distribution Agreement are referred to as the "**McKesson Agreements**." Under the terms of the McKesson Agreements, McKesson provided product distribution, logistical support and other services for the Debtor. As of March

---

[2] The April Stipulation refers to the Master Services Agreement as the "Program Service Agreement" but it is the same agreement.

12, 2018 (the "**Petition Date**"), the Debtor was in default in its performance obligations under the McKesson Agreements.

9.       On May 18, 2018, an order was entered [D.I. 319] that approved the McKesson Stipulation attached as Exhibit A thereto (the "**May Stipulation**") [D.I. 319-1] that specifically addressed, among other things, the obligations arising under the Distribution Agreement. Under the May Stipulation, subject to a reservation of offset and other rights, McKesson paid the Debtor on account of any prepetition amounts owed under the Distribution Agreement, approximately $3.666 million.

I declare under penalty of perjury, pursuant to section 1746 of title 28, United States Code, that the foregoing is true and correct to the best of my knowledge. Executed this 30th day of July, 2018 at Scottsdale, Arizona.

_____
Erin Beesley