## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OREXIGEN THERAPEUTICS, INC., | ) | Case No. 18-10518 (KG) |
| | ) | |
| Debtor. | ) | **Re: D.I. 654** |
| | ) | |

## OPINION

The Court is ruling on McKesson Corporation's ("McKesson") and its wholly

owned subsidiary McKesson Patient Relationship Solutions' ("MPRS") Motion for an

Order Determining that McKesson is Entitled to the Disputed Funds (the "Motion") (D.I.

654). McKesson seeks to affect a setoff under section 553 of the Bankruptcy Code.[1]

Specifically, McKesson asks to offset its $6,932,816.40 debt to the Debtor under the Core

Distribution Agreement ("Distribution Agreement") based on the Debtor's

approximately $9,100,000[2] debt to MPRS under the Master Services Agreement ("Services

Agreement"). For the reasons that follow, the Court finds that McKesson is seeking a

triangular setoff which is prohibited in bankruptcy due to the lack of mutuality. An

enforceable contractual right allowing a parent and its subsidiary corporation to affect a

---

[1] 11 U.S.C. §§ 101−1532.

[2] McKesson argues the Debtor owes MPRS approximately $9,100,000. Motion, ¶ 6. However, the Noteholders and Debtor instead claim the Debtor owes MPRS approximately $8,500,000. Opposition to Motion for an Order that McKesson Specialty Arizona [MPRS] is Entitled to the Disputed Funds ("Debtor's Opposition") ¶ 3 (D.I. 697); Debtor's Opposition, ¶ 20 (D.I. 698). The papers present a dispute as to the amount of MPRS's claim pursuant to the Services Agreement. The amount of MPRS's debt is not dispositive of the merits of the Motion. Therefore, the Court proceeds with the $9,100,000 figure based on the Motion. The Court is not deciding the amount of the Debtor's debt to MPRS and will address that issue separately should the issue later arise.

prepetition triangular setoff under state law does not supply the strict mutuality required in bankruptcy. The Court will therefore deny the Motion for the reasons that follow.

## BACKGROUND

The material facts are relatively undisputed. The Debtor was[3] a biopharmaceutical company that manufactured Contrave®, a drug that treats obesity. Declaration of Michael A. Narachi ("Narachi Dec."), D.I. No. 3, ¶¶ 8, 11. The United States Food and Drug Administration approved Contrave® in 2014. *Id.* ¶ 8. Prepetition, the Debtor entered into two agreements relevant here: one with McKesson, and one with MPRS. Declaration of Erin Beesley ("Beesley Dec."), D.I. No. 655, ¶ A-3-5. McKesson is the parent corporation and MPRS is its subsidiary corporation. Beesley Dec. ¶ 1. It is undisputed that McKesson and MPRS are legally distinct entities.

On June 9, 2016, effective June 1, 2016, the Debtor entered into the Distribution Agreement with McKesson, which contemplated that McKesson would purchase and distribute Contrave® to various pharmacies in the United States. The parties agreed that California law would control the terms of the agreement:

---

[3] On June 28, 2018, the Court entered an Order (I) Approving the Sale of Substantially All Assets of the Debtor Free and Clear of Liens, Encumbrances, Claims and Interests, (II) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases, and (III) Granting Related Relief (D.I. 438). On July 27, 2018, the sale closed. (D.I. 640). Post-closing, the Debtor is expected to file a plan of liquidation. Motion, ¶ 21; *see also* Debtor's Motion for Entry of an Order Authorizing the Appointment of Thomas P. Lynch as the Debtor's Wind Down Officer, ¶ 8 (D.I. 626) ("The Debtor anticipates filing a plan of liquidation . . . [to] liquidate the remaining proceeds from the Sale and make distribution to creditors.").

> VII. General
>
> . . .
>
> b. This Agreement will be governed by and construed in accordance with the laws of California, without regard to or application of conflict of law, rules or principles.

Motion, ¶ 23. More pertinently, the parties agreed that McKesson had certain rights, including a right to set off debts owed between the Debtor and its affiliates against debts owed between McKesson and its affiliates:

> VII. General
>
> . . .
>
> i. Notwithstanding anything to the contrary in this Agreement, each of McKesson Corporation and its affiliates is hereby authorized to **set-off**, recoup and apply any amounts owed by it to Manufacturer's [the Debtor's] affiliates against any all [*sic*] amounts owed by Manufacturer or its affiliates to any of McKesson Corporation or its affiliates, without prior written notice[.]

Motion, ¶ 4 (emphasis added) (citation omitted). As of the petition date, McKesson owed the Debtor $6,932,816.40 under the Distribution Agreement.  Motion, ¶ 16.

On July 15, 2016, the Debtor entered into the Services Agreement with MPRS, which contemplated that MPRS would manage the Debtor's LoyaltyScript® program. Beesely Dec. ¶ 5.  The LoyaltyScript® program enabled patients to receive price discounts on Contrave® from retail pharmacies. MPRS would pay the retail pharmacies and patients for the Contrave® price discounts and other services under the LoyaltyScript® program. Consequently, the Debtor would reimburse MPRS. The Services Agreement does not incorporate or relate to the Distribution Agreement; they are wholly distinct. As

of the petition date, the Debtor owed MPRS approximately $9,100,000 (see footnote 2, *supra*).

On March 12, 2018, the Debtor voluntarily filed a petition for relief under Chapter 11. Thereafter, the Debtor, McKesson, and MPRS entered into three stipulations that culminated in the Motion at issue here. On April 11, 2018, the Court entered an order approving a stipulation between the Debtor and MPRS (the "April Stipulation") (D.I. 176-1). The April Stipulation provided, *inter alia*, that: the Debtor would pay MPRS the sum of $6,027,155 on account of the post-petition reimbursements MPRS remitted under the LoyaltyScript® program (*Id.*, Ex. 1, at ¶ 1); the Debtor would make weekly payments of $1,675,000 to MPRS (*Id.*, at ¶ 2); but none of the foregoing payments would apply to MPRS's prepetition claim (*Id.*, at ¶ 1); and MPRS holds a prepetition claim of approximately $9,100,000 against the Debtor under the Services Agreement (*Id.*, at ¶ G).

On May 18, 2018, the Court entered an order approving a stipulation between the Debtor, McKesson and MPRS (the "May Stipulation") (D.I. 319-1). The May Stipulation provided, *inter alia*, that as of the petition date, McKesson owed the Debtor $6,932,816.40 under the Distribution Agreement (*Id.*, at 2).  Post-petition, the Debtor paid McKesson $3,266,255.76 on account of such debt but reserved its right to offset the entire $6,932,816.40 amount (*Id.*). McKesson agreed to pay the remaining $3,666,560.64 satisfying its entire prepetition obligation under the Distribution Agreement subject to preservation of its setoff right concerning the debt owed to MPRS against McKesson's debt to the Debtor (*Id.*, ¶¶ 2, 4, and 5).

4

On July 20, 2018, the Court entered an order approving a stipulation between the Debtor, McKesson, and the Lenders[4] (the "July Stipulation") (D.I. 592-1). The July Stipulation provided, *inter alia*, that McKesson would be allowed to file the Motion at issue here (*Id.*, ¶ 2); and the Debtor would segregate $6,932,816.40 (the "Disputed Funds") pending resolution of McKesson's Motion (*Id.*, ¶ 3).

On July 30, 2018, pursuant to the terms of the July Stipulation, McKesson filed the Motion at issue along with the Declaration of Erin Beesley in Support of Motion for an Order Determining that McKesson is Entitled to the Disputed Funds (D.I. 655). On August 21, 2018, the Noteholders[5] filed their opposition to the Motion in which McKesson sought a ruling that McKesson Specialty Arizona ("MPRS") was entitled to the disputed funds (D.I. 697). On the same day, the Debtor filed the Debtor's Objection to the Motion (D.I. 698) along with the Declaration of Thomas P. Lynch in Support of Debtor's Objection to the Motion.  (D.I. 699). On August 31, 2018, McKesson filed McKesson's Reply (D.I. 710). On October 24, 2018, the Court heard oral argument from McKesson/MPRS, the Debtor, and the Noteholders on the Motion. The Motion has been fully briefed and was well argued. Thus, the Motion is ripe for the Court's decision.

---

[4] The Lenders consist of the following entities: Baupost Group Securities, L.L.C.; EcoR1 Capital Fund, L.P.; and EcoR1 Capital Fund Qualified L.P (D.I. 592, at 1).

[5] The Noteholders consist of the following entities: Baupost Group Securities, L.L.C.; EcoR1 Capital Fund, L.P.; Biotechnology Value Trading Fund OS, LP; Biotechnology Value Fund LP; Biotechnology Value Fund II, LP; Investment 10, LLC; MSI BVF SPV LLC; and Roadrunner Co. (D.I. 697).

## JURISDICTION

The Court has jurisdiction over this matter and the judicial authority to enter a final order pursuant to 28 U.S.C. §§ 1334(b), 157(a), and (b)(1). Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## DISCUSSION

Setoff is a contractual or equitable right that "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). The Bankruptcy Code's Section 553(a) does not create a federal right of setoff but merely recognizes such party's right under state law. *Id.* Section 553(a) "sets forth a general rule, **with certain exceptions**, that any right of setoff that a creditor possessed prior to the debtor's filing for bankruptcy is not affected by the Bankruptcy Code." *Id.* at 20 (emphasis added). Section 553(a) states in relevant part, that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a **creditor** to offset a **mutual debt owing by such creditor** to the debtor that arose before the commencement of the case under this title **against a claim of such creditor** against the debtor that arose before the commencement of the case . . . .

(Emphasis added).

Whether a party has a setoff right under section 553 is a twofold inquiry. <u>First</u>, the party seeking setoff must acquire such right prepetition under applicable nonbankruptcy law. *In re Lehman Bros. Inc.*, 458 B.R. 134, 139 (Bankr. S.D.N.Y. 2011) ("'section 553 . . .

preserve[s] any right of setoff that may exist under applicable nonbankruptcy law.'") (quoting *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 101, 107 (Bankr. S.D.N.Y. 2010) (citation omitted); accord *In re Am. Home Mortgage, Holdings, Inc.*, 501 B.R. 44, 55 (Bankr. D. Del. 2013) (citation omitted). Second, once a party establishes its setoff right, that party must then "meet[] **the further code-imposed requirements and limitations** set forth in section 553." *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009) (citing *Packaging Indus. Grp. Inc. v. Dennison Mfg. Co. Inc. (In re Sentinel Prod. Corp. Inc.)*, 192 B.R. 41, 45 (N.D.N.Y. 1996)) (emphasis added).

### Setoff Right Under Applicable Nonbankruptcy Law

The parties do not dispute that McKesson had a prepetition setoff right pursuant to section VII.i. of the Distribution Agreement. Because the Debtor and the Noteholders do not dispute McKesson's prepetition setoff right under California law, the Court proceeds with the assumption that McKesson had such right.

### Section 553(a) Analysis

McKesson must now meet the further requirements of Section 553(a) that: (1) the party seeking setoff must be a "creditor;" and (2) that party must have a "mutual debt" where that party's debt to the debtor arose prepetition and that party's claim against that same debtor arose prepetition.

### "Creditor" under Section 553(a)

Section 101(10)(A) defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Under section 101(5)(A), a "claim" is a "right to payment." In the Motion, McKesson seems to

assume it is a creditor. In their objections, the Debtor and the Noteholders did not extensively argue that McKesson is not a creditor. However, during oral argument, the Debtor made the argument that McKesson was not. *See* Tr. of Hr'g on Oct. 24, 2018 (D.I. 804, at 19-20) ("Ms. Mumford:[6] . . . Again, Your Honor, McKesson, [a] non-creditor, [is] seeking to set off MPRS's alleged claim.")). The Noteholders made the same argument. (*Id.*, at 36) ("Mr. Murphy:[7] . . . Firstly, as noted, the party that's asserting the right to setoff is not a creditor.")). Unsurprisingly, McKesson opposed such view. (*Id.*, at 51) ("Mr. Garfinkle:[8] . . . First is an argument made that McKesson is not a creditor. Wrong – dead wrong. I direct the court's attention to the core distribution agreement. On the petition date, McKesson was a creditor.")).

Distilling the merits, McKesson asserts it is a creditor because, as of the petition date, it had a $6,932,816.40 claim against the Debtor under the Distribution Agreement. However, the Debtor and the Noteholders contend McKesson is not a creditor because pursuant to the May Stipulation, McKesson paid off this debt to the Debtor, thus extinguishing its claim. (D.I. 804, at 31) ("The Court: Am I correct that McKesson has paid the debtor? Mr. Garfinkle: Yes, Your Honor. The Court: The $6.9 million dollars? . . . Ms. Mumford: Your Honor, it was paid and the money is being held from [the] sale proceeds.")); (*Id.*, at 36) ("Mr. Murphy: That is that the funds [the $6.9 million] were paid by McKesson . . .")).

---

[6] Ms. Mumford is the Debtor's counsel.

[7] Mr. Murphy is the Noteholders' counsel.

[8] Mr. Garfinkle is McKesson's and MPRS's counsel.

"[C]ourts have held that a setoff cannot exist when the creditor pays the debt because '[o]nce a debt is paid it is no longer owed, and therefore the required mutual debts do not exist.' *United States v. Morris (In re McCormick),* 1993 WL 246001, at *2 (D. Kan. 1993); *Nat'l Bank of Boaz v. Royal Crown Bottling Co. of Boaz, Inc. (In re Royal Crown Bottling Co. of Boaz, Inc.),* 29 B.R. 52, 54 (Bankr. N.D. Ala. 1981) (any right of setoff 'was a right which could be exercised only before [payment of the] sum to the trustee, which is another way of saying that this payment by [the bank] extinguished any such right which it might have had.')." *In re Reliance Acceptance Grp., Inc.,* 2000 WL 33712305, at *3 (Bankr. D. Del. Dec. 6, 2000). McKesson no longer had a "claim" against the Debtor when it paid the Debtor $6,932,816.40 under the Distribution Agreement. At that time, McKesson, lacking a "claim," could not be a "creditor" under section 101(10)(A) and thus section 553(a).

The court's decision by Judge Walsh in *Reliance Acceptance* is not entirely fatal to McKesson. There, the issue was whether Williams had a setoff right against Reliance after paying off his debt. Judge Walsh opined: "it seems clear to me that Williams lost his right to assert a setoff when he voluntarily paid his loan to Reliance in full. By paying his indebtedness Williams extinguished his liability to Reliance. . ." *Id.* However, Judge Walsh determined that Williams' repayment was voluntary and not at the direction of a bankruptcy court order or at a bankruptcy trustee's request. *Id.* He qualified his holding by finding that "a creditor's right to assert setoff may survive [where] there is no intent to extinguish[] the underlying liability which gives rise to the requisite mutuality of obligation. *See, e.g., In re Public Serv. Co. of New Hampshire v. New Hampshire Elec. Coop.,*

9

*Inc. (In re Public Serv. Co. of New Hampshire)*, 884 F.2d 11, 13 (1st Cir. 1989) (payment of indebtedness pursuant to a bankruptcy court judgment does not render the creditor ineligible to seek setoff where creditor otherwise asserted and maintained its rights)." *Id.*[9]

McKesson's position is saved by the May and July Stipulations. The May Stipulation provides that McKesson's payment in satisfaction of the Distribution Agreement is subject to its preservation of its setoff right as to the entire Disputed Funds. (D.I. 319-1, ¶¶ 2, 4, and 5). The July Stipulation provides for the segregation of the Disputed Funds so McKesson/MPRS can file the Motion at issue. (D.I. 592-1, ¶¶ 2 & 3). McKesson agreed to pay off its debt to the Debtor and thereby extinguish its claim only because it could preserve its setoff right, reserve its ability to file the Motion, and have the Disputed Funds segregated. Given the factual posture, McKesson would likely not have paid off its entire prepetition debt under the Distribution Agreement but for such reservation of rights. While this case can be distinguished from *Reliance Acceptance* because McKesson did not intend to extinguish its debt by stipulation as opposed to a bankruptcy court order or at the direction of the bankruptcy trustee, the Court finds that Judge Walsh's overarching point in *Reliance Acceptance* is well-taken.

For those reasons, the Court finds that McKesson *may* have been a "creditor." Although the parties did dispute whether McKesson was a "creditor," they gave short-shrift in their papers to the issue compared to the mutuality arguments which the Court discusses below. They did not fully brief this issue. It is only fair to consider McKesson

---

[9] It is important to observe that in *Reliance Acceptance*, Judge Walsh wrote of the "requisite mutuality of obligation."  The requirement of mutuality is discussed below.

to be a "creditor" given the May and July Stipulations without which the Court would not deem McKesson to be a creditor.

## Mutuality under Section 553(a)

Once a party has a prepetition setoff right under applicable nonbankruptcy law, that party must then meet "[t]he additional restrictions imposed by section 553 [which are] well-settled." *SemCrude*, 339 B.R. 393 (citing *Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 738-39 (Bankr. S.D.N.Y. 1995)). The plain language of Section 553(a) only allows a creditor to offset a "mutual debt." There is no statutory definition of "mutuality" or a "mutual debt" under the Bankruptcy Code. However, state[10] and federal courts have found to a fare-thee-well that debts are "'mutual' only when 'they are due to and from the same persons in the same capacity.'" *Id.* (citing *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d. Cir. 2002) (citing *Westchester Structures*, 181 B.R. at 740)); *Lehman Bros.*, 458 B.R. at 140 (citing *Lines v. Bank*

---

[10] *See, e.g., In re Garden Ridge Corp.*, 338 B.R. 627, 633 (Bankr. D. Del. 2006) (citing among other Texas cases *Mullen v. Cheatham*, 1999 WL 1095917, at *3 (Tex. App. 1999) ("Under Texas and Federal law, '[m]utuality of obligation exists when debts are owing between the same parties in the same right or capacity.'"); *In re Czyzk*, 297 B.R. 406, 409 (Bankr. D.N.J. 2003) ("In New Jersey, obligations are mutual where the debts involve the same parties standing in the same capacities.") (citation omitted). Moreover, McKesson's chief case is: *Prudential Reinsurance Co. v. Superior Court*, 842 P.2d 48 (Cal. 1992). There, the California Supreme Court dealt with setoff under Insurance Code section 1031. As established above the line, setoff under state and federal law garner the same mutuality requirement and, in turn, identical definitions of mutuality. After all, "[s]ection 1031 allows the setoff of all mutual debts and credits in the course of liquidating proceedings and is patterned after the federal Bankruptcy Act of 1898 (11 U.S.C. § 108, repealed and reenacted as 11 U.S.C. § 553), and an identical New York statute that has been adopted by several states." *Id.* at 50. Indeed, the California Supreme Court explicitly said "[t]he key to setoff is the requirement of mutuality. Justice Benjamin Cardozo defined mutuality as follows: '[t]o be mutual, [the debts] must be due to and from the same persons in the same capacity.' . . . '[S]uch debts must exist between the same persons or entities in order to establish mutuality of identities.'" *Id.* at 53 (citations omitted).

*of Am. Nat'l Trust & Sav. Ass'n*, 743 F. Supp. 176, 183 (S.D.N.Y. 1990) (internal quotation marks and citations omitted) ("The Bankruptcy Code does not define mutuality, but courts consistently find debts to be mutual only when they are 'in the same right and between the same parties, standing in the same capacity.'")); *In re Garden Ridge Corp.*, 338 B.R. 627, 634 (Bankr. D. Del. 2006) (citing *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987) ("'For mutuality to exist, each party must own his own right severally, with the right to collect in his own name against the debtor in his own right and severally.'"); *see also Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398-99 (9th Cir. 1996) (same); *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1537 (10th Cir. 1990) (same).

Under section 553(a), "mutuality is strictly construed against the party seeking setoff." *SemCrude*, 399 B.R. at 396 (citation omitted); *Garden* Ridge, 338 B.R. at 634 (citation omitted) (same); *In re Am. Home Mortgage Holdings, Inc.*, 501 B.R. 44, 56 (2013) (citation omitted) (same). Moreover, the creditor seeking setoff has the burden of proof on the mutuality requirement. *Garden Ridge*, 338 B.R. at 632 (citing *In re Lason, Inc.*, 314 B.R. 296, 305 (Bankr. D. Del. 2004); *In re Bennett Funding Grp., Inc.*, 212 B.R. 206, 212 (2d Cir. BAP 1997)); *see also Lehman Bros.*, 158 B.R. at 140 (citation omitted) (same). The Bankruptcy Court's sound discretion governs the allowance of a setoff. *Garden Ridge*, 338 B.R. at 632 (citing *In re Cont'l Airlines*, 218 B.R. 324, 328 (D. Del. 1997) (citing *United States, Internal Revenue Service v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983)) (additional citations omitted)).

Here, under the foregoing authorities, McKesson does not have a mutual debt under section 553(a). As of the petition date, McKesson owed the Debtor $6,932,816.40

and the Debtor owed MPRS approximately $9,100,000. Post-petition, McKesson paid the

debt in its entirety. Now, McKesson seeks to claw back its payment through a triangular

setoff. A triangular setoff is a setoff between an affiliate of a contractual party and the

counter-contractual party. McKesson's argument is that because the Debtor owes MPRS

in excess of the amount of the Disputed Funds under the Services Agreement, section

553(a) enables McKesson to set off the MPRS claim against McKesson's payment under

the Distribution Agreement. However, McKesson runs into fatal contrary bankruptcy

precedent.  A triangular setoff is impermissible under section 553(a) without mutuality.

In *SemCrude*, Judge Shannon's explanation is instructive and the Court agrees:

> Because of the mutuality requirement in section 553(a), courts have
> routinely held that triangular setoffs are impermissible in bankruptcy; *See,
> e.g., Matter of United Sciences of Am., Inc.*, 893 F.2d 720, 723 (5th Cir. 1990)
> ('The mutuality requirement is designed to protect against 'triangular' set-
> off; for example, where the creditor attempts to setoff debt to the debtor
> with the latter's debt to a third party.'); *In re Elcona Homes Corp. (Green Tree
> Acceptance, Inc.)*, 863 F.2d 483, 486 (7th Cir. 1988) (holding that the Code
> speaks of 'mutual debt' and 'therefore precludes 'triangular' set offs').

*SemCrude*, 339 B.R. at 393. The District Court agreed and affirmed Judge Shannon. *See In

re SemCrude, L.P.*, 428 B.R. 590, 594 (D. Del. 2010) ("As the Bankruptcy Court correctly

recognized, the mutuality required by Section 553 'cannot be supplied by a multi-party

agreement contemplating a triangular setoff.'") (citation omitted).

Furthermore, McKesson is the parent corporation and MPRS is its subsidiary

corporation. They are legally distinct entities. Thus, their corporate structure poses

another issue preventing McKesson from affecting a triangular setoff. The Court wholly

agrees with Judge Shannon's assessment on this point:

Moreover, because each corporation is a separate entity from its sister corporations absent a piercing of the corporate veil, a 'subsidiary's debt may not be set off against the credit of a parent or other subsidiary, or vice versa, because no mutuality exists under the circumstances.' *Sentinel Products Corp.*, 192 B.R. [41,] 46 [(N.D.N.Y. 1996)] (citing *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 618 n. 2 (2d Cir. 1989)). Allowing a creditor to offset a debt it owes to one corporation against funds owed to it by another corporation — **even a wholly-owned subsidiary** — would thus constitute an improper triangular setoff under the Code.

*Id.* at 393-94 (emphasis added).[11] McKesson recognizes this problem as it cites *SemCrude* and *Lehman Bros.* for propositions that setoff under section 553(a) requires a mutual debt and that triangular setoffs are improper under the Bankruptcy Code. *See* Motion, ¶ 42 ("McKesson is confident that the Lenders will refer to similar decisions."); *McKesson's Reply in Support of Motion for an Order Determining that McKesson is Entitled to the Disputed Funds* (the "Reply"), ¶ 1 (citing its Motion in the footnote, from which the Court just quoted) ("[The Lender Parties] go on and on about the fact that there are a large number of published decisions that reach conclusions contrary to the relief requested in the Motion. That is undisputed; to the contrary, McKesson admits it in the Motion."). However, McKesson mistakenly contends that those decisions were not based "on proper controlling Supreme Court and Third Circuit precedent and governing principles." *Id.*

Mutuality is defined under state law. *Garden Ridge*, 338 B.R. at 633 (citing *In re Czyzk*, 297 B.R. 406, 409 (Bankr. D. N.J. 2003)); *In re Sunset Aviation*, 468 B.R. 641, 647 (Bankr. D. Del. 2011) ("[T]he right of setoff requires mutuality between the debtor and

---

[11] Note that in *SemCrude*, Judge Shannon dealt with three debtors and one creditor. The creditor sought to set off a debt it owed to one debtor against a claim against another debtor. Here, we have two creditors and one debtor. However, this minor distinction in form does not alter the substance of the law.

the creditor under the applicable state law."). However, several state and federal courts consistently define "mutual debt" or "mutuality" uniformly. In a nutshell, McKesson argues that when a creditor seeks to affect a setoff, the Bankruptcy Court's inquiry must begin and end with state law. That is, state law determines whether a creditor has a setoff right and also governs whether mutuality exists. Thus, McKesson's view that because California law governs the Distribution Agreement and California, according to McKesson, allows for an agreement between a parent and subsidiary to supply the requisite mutuality the latter needs to "be deemed a mutual debtor-creditor of the parent," a triangular setoff is permitted under section 553(a). Motion, ¶ 15 (citation omitted). For the following reasons, the Court rejects McKesson's argument as a matter of law and policy.

McKesson's point of departure is a precedential bankruptcy case, *Butner v. United States*, 440 U.S. 48, 55 (1979). *Butner* held that state law, not a federal law or a rule of equity, determined whether a security interest in property extends to rents and profits derived from the property. *Id.* at 48. *Butner* is eminent for its proposition that state law rights are respected in bankruptcy absent a contrary bankruptcy rule or policy. In its analysis, the Supreme Court explained with the oft-cited language:

> **Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.** Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a 'windfall merely by reason of the happenstance of bankruptcy.'

*Id.* at 55 (emphasis added) (citation omitted).

The Court agrees that McKesson had a prepetition setoff right. McKesson, lacking the mutuality requirement, uses *Butner* to support its assertion that its Distribution Agreement under California law permits a triangular setoff in bankruptcy. McKesson relies on a California Supreme Court case, *Prudential Reinsurance Co. v. Superior Court*, 842 P.2d 48 (Cal. 1992). Extraordinarily, McKesson relies on one sentence, which is *dicta*:[12] "Accordingly, we refuse to expand the section 1031 setoff of debts in the absence of an express mutual agreement that the subsidiary would be deemed a mutual debtor-creditor of the parent (See, e.g., *In re Berger Steel Company* (7th Cir. 1964) 327 F.2d 401; *Black & Decker Mfg. Co. v. Union Trust Co.* (1936) 53 OhioApp. 356 [4 N.E.2d 929].)." *Id.* at 60.

In *Prudential Reinsurance*, the California Supreme Court held in the affirmative concerning "whether reinsurance debts and credits generated between a reinsurer and the original reinsurer, under the terms of their reciprocal reinsurance contracts, may be set off pursuant to section 1031 [of the Insurance Code], when the original insurer becomes insolvent." *Id.* at 50 & 52. Most aptly, the court explained "the key to setoff

---

[12] At oral argument, McKesson agreed that it relies on dicta from *Prudential Reinsurance*. "The Court: Isn't that dicta? Mr. Garfinkle: **It is dicta**, but for a predictive analysis it's the only guidance the court has as to how a California Court would rule on this." Tr. of Hr'g on Oct. 24, 2018, at 10, lines 13-16 (D.I. 804) (emphasis added). The Court finds this argument unavailing for **three reasons**. **First**, it is dicta because the language McKesson cites is not necessary to the holding. *Friedman's Liquidating Trust v. Roth Staffing Cos. (In re Friedman's Inc.)*, 738 F.3d 547, 552 (3d. Cir. 2013) (When statements are not germane to a court's analysis, the language is dicta and not binding). The Court declines to do a "predictive analysis" or give stronger weight to the cited dicta in *this case* in light of the two next countervailing reasons. **Second**, as reiterated above the line, California aligns with the majority of state and federal courts defining mutuality. **Third**, as the Court will discuss below, section 553(a) imposes *additional restrictions* on a creditor's ability to setoff, which nullifies McKesson's entire *Butner* argument as a matter of bankruptcy law and policy.

[under Insurance Code section 1031] is the requirement of mutuality, under which the debts must be due to and from the same persons in the same capacity." *Id.* at 53. Moreover, the California Court held that the debts must be mutual in three respects: (1) "the debts must be owed contemporaneously with, or prior to issuance of, the liquidation order;" *id.* (citation omitted) (2) **"such debts must exist between the same persons or entities in order to establish mutuality of identities;"** *id.* (emphasis added) (citation omitted) and (3) "setoff can occur only between persons or entities of equal capacity." *Id.* (citation omitted). Thus, despite McKesson's reliance on *Prudential Reinsurance*, California defines mutuality consistently with the authorities the Court relies upon.

Moreover, the dicta McKesson relies upon cites to an inapposite Seventh Circuit case, *In re Berger Steel Co.*, 327 F.2d 401 (7th Cir. 1964) and an inappropriate Ohio Court of Appeals case, *Black & Decker Mfg. Co. v. Union Trust Co.*, 4 N.E.2d 929 (Ohio Ct. App. 1936). In *SemCrude*, Judge Shannon analyzed *Berger Steel* and explained it did not provide a contractual exception to mutuality. The Court agrees and adopts that analysis. In *Berger Steel*, the court dealt with whether "a party attempting to effect a triangular setoff, and contending that an oral agreement between it and two other parties created sufficient mutuality of amounts owing and owed to make a triangular setoff proper between the parties under the Bankruptcy Act." *SemCrude*, 39 B.R. at 395 (citing *Berger Steel*, 327 F.2d at 404). The Seventh Circuit found no such agreement existed and rejected the argument. *Id.* (citing *Berger Steel*, 327 F.2d at 404-05). While the Seventh Circuit found that some cases allowed a contractual right of triangular setoff, such rights derived from "state law or the

17

common law of equitable receivership, and none [] were decided under the more restrictive language of either the Bankruptcy Act or the Code." *Id.*

In *SemCrude*, the court found that the Seventh Circuit did not "address[] the broader question of whether a triangular setoff was permissible under the Bankruptcy Act if a contract signed by the parties to the proposed setoff contemplated such a remedy." *Id.* However, the court read *Berger Steel* and its progeny to allow an "exception to the strict mutuality requirement [] in the Bankruptcy Act." *Id.* The Bankruptcy Court of the Southern District of New York (Judge Peck) also adopted Judge Shannon's analysis of *Berger Steel*. In fact, no court has "actually permit[ed] a triangular setoff or address[ed] the merits of this purported exception in a written opinion as it relates to section 553(a)." *SemCrude*, 399 B.R. at 396. Any section 553(a) mutuality exception via contract was merely "created by a game of 'whisper down the lane' from decision to decision." *Lehman Bros.*, 458 B.R. at 142. In sum, the plain language of section 553(a) is clear and there is no contractual exception to mutuality. *Id.*

McKesson cites to *Black & Decker* in support of its attempt to establish mutuality. However, that case is inapposite for two reasons. First, it dealt with setoff outside of bankruptcy. Second, the court allowed a parent to "set off the accounts of its subsidiary corporations in an insolvent bank against its debt to such bank" because the parties intended that the parent and its subsidiaries were treated as one corporation. *Black & Decker*, 4 N.E.2d at 929. Here, McKesson is the parent and MPRS is its subsidiary, and it is undisputed that they are legally distinct entities.

McKesson also argues that *Butner*'s "federal interest" exception is inapplicable here. Specifically, McKesson "asserts that there is no federal interest that would impose a federal gloss on the application of state law to these [setoff] rights . . . . [T]he correct reading of section 553 is to conclude that the section does not create any federal right of setoff and it does not interfere with McKesson's rights under California law." Motion, ¶ 25. The Court disagrees.

Congress in enacting section 553(a) recognized a federal interest. The statutory language is the point of departure for statutory interpretation. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 388 (2013). "[W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *SemCrude*, 399 B.R. at 398 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). When statutory language is clear, "judicial inquiry is complete." *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991).

Here, section 553(a) is unambiguous in providing that a "mutual debt" must be "owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case" subject to certain exceptions. However, none of those exceptions state or imply a multi-party contractual exception exists to the mutuality requirement allowing a triangular setoff. *See* Section 553(a)(1)-(3) and (b). A contractual exception to mutuality would be incongruent with the express provision of section 553(a). McKesson is the *creditor* seeking to offset a debt of $6,932,816.40 it owes to the Debtor that

arose prepetition under the Distribution Agreement against a $9,100,00 claim of MPRS against the debtor that arose prepetition. Statutorily speaking, that cannot happen.

Furthermore, section 553(a) aligns with the fundamental bankruptcy policy of ensuring similarly-situated creditors receive an equal distribution from the debtor's estate. If parties can contract around section 553(a)'s mutuality requirement, a creditor could receive a greater distribution than other equal-footed creditors and thus dilute the entire estate to the detriment of all creditors. *SemCrude*, 399 B.R. at 399. Mutuality is the lynchpin of setoff under section 553(a). Thus, the cases the Court relies upon, *SemCrude* and *Lehman Bros.*, are not inconsistent with *Butner*. The Court refuses to read a contractual exception to strict mutuality allowing for triangular setoff in the face of contrary bankruptcy precedent and policy.[13]

### Third-Party Beneficiary

McKesson argues that the contractual third-party beneficiary doctrine provides it with the required mutuality. A third-party beneficiary to a contract is a party who directly or incidentally benefits from a contract between two other parties. *See*, *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 336-37 (S.D.N.Y. 2005). McKesson's argument is that MPRS is a third-party beneficiary of the Distribution Agreement and "[t]hus, as a legally recognized party to the Distribution Agreement, MPRS stands in a direct counter-

---

[13] The District Court in affirming *SemCrude* agreed: "This conclusion [concerning triangular setoffs] is not only consistent under the facts and applicable case law, but also with general bankruptcy principles concerning the strict construction of mutuality against the party seeking setoff. In addition, the Court concludes that the Bankruptcy Court correctly determined that a 'contract exception' to the mutuality requirement does not exist based upon the plain language of Section 553 . . . [because] the primary goal of the Bankruptcy Code is to ensure equal and fair treatment among similarly situated creditors." *SemCrude*, 428 B.R. at 594.

contractual relationship with the Debtor on both contracts—the Distribution Agreement and the Master Services Agreement. This satisfies any mutuality requirement for effectuating setoff." Motion, ¶¶ 44-46 (citations omitted). The Court once again disagrees.

McKesson cites two cases for the proposition that a third-party beneficiary to a contract has the requisite mutuality for setoff under section 553(a). Both are inapposite. First is *In re Bacigalupi, Inc.,* 60 B.R. 442, 446 (9th Cir. BAP 1986). McKesson only provides a mere parenthetical referring to the Ninth Circuit Bankruptcy Appellate Panel's statement that a setoff claim 'cannot fail for lack of mutuality' where complaint alleges third-party beneficiary status. Motion, ¶ 46 (citing *Bacigalupi*, 60 B.R. at 446). However, the panel only found that the bankruptcy court abused its discretion in refusing to modify relief from stay to allow a creditor to plead setoff under a state court proceeding. *Bacigalupi*, 60 B.R. at 447. Moreover, while the panel referenced mutuality, it did not examine setoff in the bankruptcy context or hold that third-party beneficiary status is an exception to the strict application of mutuality under section 553(a).

The second case which McKesson cites is *Saudi Basic Indus. Corp. v. Exxonmobil Corp.*, 194 F. Supp. 2d 378 (D.N.J. 2002). McKesson provides a mere parenthetical stating "Exxon, as a third[-]party beneficiary to a contract, can assert a setoff defense and the setoff defense does not fail for lack of mutuality." Motion, ¶ 46. The quoted language is misleading. *Saudi* did not deal with section 553(a). The district court held, *inter alia*, that Exxon's third-party beneficiary status was sufficiently pled, but the third-party status for setoff purposes could not be resolved on a motion brought pursuant to Federal Rule of Civil Procedure 12(c). *Saudi*, 194 F. Supp. 2d at 394-95.

Some bankruptcy courts have rejected third-party beneficiary status as sufficient to create mutuality under section 553(a). *See State of Louisiana v. Celebrity Contractors, Inc. (In re Celebrity Contractors, Inc.)*, 524 B.R. 95, 110-11 (Bankr. E.D. La 2014) (finding that mutuality under section 553 requires the off-setting obligations to be held by the same parties in the same capacity and thus the latter is not met where the "State's debt to Celebrity is owed not in Celebrity's corporate capacity . . . but rather in its capacity as a third-party beneficiary . . . to the State's debt to homeowners . . ."); *see also In re J.A. Clark Mech., Inc.*, 80 B.R. 430, 433 (Bankr. N.D. Ohio 1987) ("CWRU's alleged status as third-party beneficiary of the contract . . . would not satisfy the mutuality requirement. As third-party beneficiary, any right to recover would not be in the same right and capacity as the direct contractual obligation . . . [s]etoff on this basis, is, accordingly, inappropriate."). The Court recognizes that the third-party beneficiary doctrine is contrary to the strict mutuality requirement.

As a matter of policy, McKesson's third-party beneficiary status argument is just as unavailing as its attempt to distort *Butner* in interpreting California law as legalizing a contractual exception to mutuality in bankruptcy. If there were a contractual third-party beneficiary status exception, parties would merely add language intending that a third-party be a third-party beneficiary of a contract allowing for triangular setoff. The Court refuses to open the door to such circumvention of the Bankruptcy Code. Thus, the Court rejects McKesson's third-party beneficiary status argument.

22

## California Commercial Code Section 9404

Section 9404 of the California Commercial Code states in relevant part, that:

(a) Unless an account debtor has made an enforceable agreement not to assert defenses or claims . . . the rights of an assignee are subject to both of the following:

    (1) All terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract.

    (2) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

McKesson argues that section 9404 preserves its setoff right and affords it priority over all of the Lenders' secured claims. Any prepetition or post-petition "party assigned or otherwise taking a security interest in the debtor's asset takes that security interest subject to all of McKesson's contractual rights . . . including [its setoff] rights." Motion, ¶ 54. As the Court extensively analyzed above, McKesson lacks the required mutuality for setoff in bankruptcy. Regardless of whether McKesson's section 9404 argument is meritorious, such argument does not supply the requisite mutuality for section 553(a). Thus, the Court finds this argument unavailing.

## CONCLUSION

For the foregoing reasons, the Court finds that McKesson, even if it was a creditor, did not have a mutual debt where its debt to the debtor arose prepetition and its claim against that same debtor arose prepetition. The Court further finds that McKesson's argument that there is a contractual exception to section 553(a)'s mutuality requirement under California law allowing for triangular setoff is not persuasive in light of highly persuasive precedent, section 553(a)'s plain language, and the Bankruptcy Code's policy. McKesson is correct that *Butner* provides that state law creates and defines property rights, but *Butner* is also clear that a federal interest may require a different result. Setoff under section 553(a) is a case in point. McKesson's use of *Butner* in a creative attempt to convolute a well-settled bankruptcy issue created a pause but it cannot carry the day. Accordingly, the Court denies the Motion and will issue an Order.


Dated:   November 13, 2018

_Kevin Gross_____
KEVIN GROSS, U.S.B.J.