## **Exhibit 1**

**Second Stipulation**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Orexigen Therapeutics, Inc. | Case No. 18-10518 (KG) |
| Debtor.[1] | **Re: Docket Nos. 189, 713** |

## SECOND STIPULATION AUTHORIZING
## THE DEBTOR'S USE OF CASH COLLATERAL

The debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor") and U.S. Bank National Association, as Trustee and Prepetition Collateral Agent, for the benefit of the Holders (as defined in the Indenture) of the notes issued under that certain Indenture, dated as of March 21, 2016 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the Petition Date (as defined below), the "Indenture") (the Trustee, Prepetition Collateral Agent, and certain Holders who are parties to this Second Stipulation (the "Required Holders"), collectively, the "Prepetition Secured Parties", and together with the Debtor, the "Parties"), by and through their undersigned counsel, hereby enter into this second stipulation (the "Second Stipulation") and stipulate and agree as follows:[2]

### RECITALS

**WHEREAS**, on March 12, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Court");

---

[1] The last four digits of the Debtor's federal tax identification number are 8822. The Debtor's mailing address for purposes of this Chapter 11 Case is 3344 North Torrey Pines Court, Suite 200, La Jolla, CA 92037.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Final DIP Order (as defined below) [Docket No. 189].

**WHEREAS**, On April 13, 2018, the Court entered the *Final Order (I) Approving Debtor-In-Possession Financing Pursuant to 11 U.S.C. §§ 105(a), 362, and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 and Local Bankruptcy Rule 4001-2; (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 of the Bankruptcy Code; (III) Granting Adequate Protection and Super-Priority Administrative Claims; and (IV) Granting Related Relief* [Docket No. 189] (the "Final DIP Order");

**WHEREAS**, prior to the Petition Date, the Debtor and the Prepetition Secured Parties entered into the Indenture, under which the Debtor issued its 0% Convertible Senior Secured Notes in the aggregate principal amount of up to $165,000,000 (the "Prepetition Secured Notes");

**WHEREAS**, subject to the rights of the Official Committee of Unsecured Creditors (the "Committee") to challenge the same pursuant to the provisions of and under the circumstances described in the *Stipulation Resolving Potential Challenges under Final DIP Order*, approved by this Court on June 27, 2018 [Docket No. 431], the Prepetition Secured Notes (except as to "Permitted Liens," as defined in the Indenture), were secured by valid, first priority, fully-perfected and enforceable security interests in and liens on all of Debtor's right, title and interest in, to and under the "Pledged Collateral" as defined in the Security Agreement, dated as of March 21, 2016, by and between the Debtor, the Trustee, and the Prepetition Collateral Agent;

**WHEREAS**, on July 27, 2018 (the "Maturity Date"), the Debtor sold substantially all of its assets to Nalpropion Pharmaceuticals, Inc. (the "363 Sale") pursuant to the Court's *Order (I) Approving the Sale of Substantially all Assets of the Debtor Free and Clear of Liens, Encumbrances, Claims and Interests, (II) Approving the Assumption and Assignment of*

*Designated Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 438] (the "Sale Order");

**WHEREAS**, pursuant to the Final DIP Order, DIP Loan Documents, and Sale Order, on the Maturity Date a portion of the cash proceeds from the 363 Sale was used to pay down in full all of the DIP Obligations, and the DIP Liens and DIP Super-priority Claims (the "DIP Loans") have now been released or satisfied, as applicable;

**WHEREAS**, the Debtor is holding approximately $26,926,000 in cash comprised of (x) the proceeds of the 363 Sale remaining after (i) repayment of the DIP Loans and other payments made at the closing of the Sale (the "Sale Closing"), and (ii) payments on account of certain administrative expenses of the estate made after the Sale Closing with the consent of the Required Holders and the Collateral Agent and (y) other cash on hand (collectively, the "Estate Cash");

**WHEREAS**, the Estate Cash, together with other proceeds of Pledged Collateral that the estate may receive in the future, is "cash collateral" (as defined in section 361 of the Bankruptcy Code) of the Prepetition Collateral Agent (the "Cash Collateral");

**WHEREAS**, pursuant to Paragraph 35 of the Final DIP Order, the Debtor's authority to use Cash Collateral, including the Estate Cash, terminated on the Maturity Date;

**WHEREAS**, the Debtor and Prepetition Secured Parties entered into that certain Stipulation Authorizing Use of Cash Collateral, dated as of September 4, 2018, and approved by the Court on September 5, 2018 [Docket No. 713] (the "First Stipulation"), whereby the Prepetition Secured Parties consented to the Debtor's continued use of Cash Collateral following the Maturity Date through November 30, 2018 (the "Termination Date"), subject to the terms and conditions set forth therein;

**WHEREAS**, the Debtor's authorization to use Cash Collateral pursuant to the First Stipulation terminated on the Termination Date;

**WHEREAS**, the Debtor is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense, or Section 364(a) or (b) to fund the wind-down of its operations, pre-closing administrative expenses and the completion of its Chapter 11 Case (the "Wind-Down");

**WHEREAS**, the Debtor requires continued use of Cash Collateral following the Termination Date to fund the Wind-Down, and the Prepetition Secured Parties have agreed to consent to such use of Cash Collateral, subject to the terms and conditions herein; and

**WHEREAS**, the Committee hereby supports the Debtor's continued use of Cash Collateral for the purposes, and subject to the terms and conditions, set forth herein.

**NOW, THEREFORE,** in consideration of the foregoing recitals, which are incorporated into, and are material terms of, this Second Stipulation, and the covenants contained herein:

1.      **Consent and Authorization**.  The Prepetition Secured Parties hereby consent to the Debtor's use, and the Debtor is hereby authorized to use, the Cash Collateral of the Prepetition Secured Parties to fund the Wind-Down, with effect from and after the Termination Date through the earliest of (a) the effective date of the Debtor's plan of liquidation; (b) February 28, 2018; (c) (i) entry of any order constituting a stay, modification, appeal or reversal of the order approving this Second Stipulation (the "Order"), (ii) the appointment of any examiner with expanded powers, (iii) entry of any order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under Chapter 7, (iv) entry of an order providing relief from the automatic stay to permit any creditor other than the Prepetition Collateral Agent to realize upon or exercise any right or remedy with respect to any material portion of the Pledged Collateral,

4

(v) subject to Paragraph 8 hereof, the Debtor's failure to timely deliver a Budget in accordance with Paragraph 6 hereof, or (vi) the Debtor's filing of a motion or other request for relief seeking to modify or alter or vacate the Order or any term thereof; and (d) termination of the Debtor's authority to use Cash Collateral pursuant to Paragraph 8 of this Second Stipulation (such date, the "Termination Date"), solely in accordance with the budget attached hereto as **Exhibit A**, as such budget may be amended from time to time with the prior written consent of the Prepetition Collateral Agent and the Required Holders (the "Cash Collateral Budget"). Upon the Termination Date, subject to Paragraph 8 of this Second Stipulation, the Debtor's authorization to use Cash Collateral shall cease without the need for any further action or notice on the part of the Prepetition Collateral Agent or the Debtor, or any further order of the Court.

2. **Adequate Protection Liens and Claims**. The Adequate Protection Liens and Adequate Protection Claims granted to the Prepetition Collateral Agent, for the benefit of the Holders, pursuant to the Final DIP Order are hereby ratified and are granted and allowed with effect from and after the Termination Date, respectively, with respect to the Diminution of Value of the Prepetition Collateral Agent's interest in the Pledged Collateral arising from the Debtor's use of Cash Collateral, on the same terms and with the same effect as provided in the Final DIP Order, including with respect to the portion of the Carve-Out (subject to Paragraph 26 and the other provisions of the Final DIP Order) that was not heretofore used to make any of the payments included in the definition thereof in the Final DIP Order on or after the Sale Closing; provided, however, that the Adequate Protection Liens and Adequate Protection Claims, respectively, shall not be junior and subordinate to (a) the DIP Obligations, (b) the DIP Liens, or (c) the DIP Super-priority Claim.

3. **Adequate Protection Payments**.  As adequate protection for the use of Cash Collateral, the Debtor shall (i) make current cash payments payable under the Prepetition Note Documents to the Trustee or the Prepetition Collateral Agent for all reasonable professional fees and expenses incurred by the Trustee or Prepetition Collateral Agent in connection with enforcement of the Prepetition Note Documents and the Chapter 11 Case, including, without limitation, reasonable professional fees and expenses incurred in connection with the litigation pending in the Southern District of New York styled *Sabby Volatility Warrant Master Fund, Ltd and Sabby Healthcare Master Fund, Ltd. v. U.S. Bank National Association*, Case No.: 18-cv-05224 (GBD), and (ii) pay the reasonable fees and expenses of counsel to the Required Holders, in each instance subject to the delivery of a Fee Notice in the manner set forth in Paragraph 45 of the Final DIP Order; provided, however, that the Debtor's payment of such fees and expenses shall be subject to any required recharacterization as principal payments in accordance with section 506(c) of the Bankruptcy Code.

4. **Adequate Protection Limitations**.  Notwithstanding anything in this Second Stipulation to the contrary, pursuant to Paragraph 23 of the Final DIP Order, (a) the Prepetition Liens shall exclude any calculation, claim or contest based on the priming of such liens by the DIP Facility or the consequent use of Cash Collateral, (b) the Rights of the Committee to challenge the extent of the Diminution of Value, and the respective rights of the Prepetition Collateral Agent and the Holders, to contest any such challenge, are preserved, and (c) the Adequate Protection Liens and Adequate Protection Claims shall not attach to or have recourse against the Free & Clear Assets; provided, however, that no Cash Collateral shall be used to challenge the Diminution of Value or assert any other Challenge.

5. **<u>Additional Adequate Protection</u>**.  Nothing contained in this Second Stipulation or the Order shall preclude or limit in any way the Prepetition Collateral Agent's right to seek adequate protection in addition to the adequate protection granted herein.

6. **<u>Budget</u>**.  Attached hereto as **Exhibit A** is the updated Cash Collateral Budget for the Wind-Down, which has been approved by the Prepetition Collateral Agent and the Required Holders.  All references to the Cash Collateral Budget (which includes the Cash Collateral Budget attached as Exhibit A) shall mean as the same is subject to the Disbursements Permitted Deviation (as defined herein). For purposes of this Second Stipulation, "Disbursements Permitted Deviation" means the actual aggregate amount of disbursements set forth in the Budget and each previous Budget Test Period set forth in the Cash Collateral Budget, exclusive of (i) amounts that are to be reimbursed under the Transition Services Agreement, dated July 27, 2018, between the Debtor and Nalpropion Pharmaceuticals, Inc., (ii) reimbursements of operating receipts to Nalpropion Pharmaceuticals, Inc. that were erroneously paid to the Debtor following the Closing, and (iii) all adequate protection payments required to be paid pursuant to Paragraph 3 of this Second Stipulation, which shall not exceed 115% of the budgeted aggregate amount of such disbursements set forth in the Budget. Commencing on the second Wednesday following the date the Court shall have approved this Second Stipulation, the Debtor shall deliver to the Prepetition Collateral Agent no less frequently than once every two weeks an updated budget (each a "<u>Proposed Budget</u>") reflecting bi-weekly cash flow forecasts of receipts and disbursements for such Budget period. Each Proposed Budget shall be subject to review and approval by the Prepetition Collateral Agent and the Required Holders before being deemed an approved Cash Collateral Budget. Three (3) Business Days after delivery of a Proposed Budget, unless the Prepetition Collateral Agent or the Required Holders deliver(s) a written, good faith,

objection to the Debtor (a "Proposed Budget Objection") setting forth specific objections to the Proposed Budget, such Proposed Budget shall be deemed approved by the Prepetition Collateral Agent and the Required Holders and shall become the new Cash Collateral Budget. If the Prepetition Collateral Agent or the Required Holders shall have timely delivered a Proposed Budget Objection to the Debtor, the prior approved Cash Collateral Budget shall continue in place and the Debtor and Prepetition Collateral Agent shall negotiate in good faith to resolve the objections set forth in the Proposed Budget Objection. Upon resolution of the objections set forth in the Proposed Budget Objection, such Proposed Budget shall become the new Cash Collateral Budget.

7. **Budget Compliance and Covenants**.

a. Compliance with the Cash Collateral Budget shall be tested for the first two week period and each subsequent two week period on a cumulative basis (each a "Budget Test Period"). During each Budget Test Period, the Debtor will not permit the actual aggregate amount of disbursements set forth in the Cash Collateral Budget to exceed the Disbursements Permitted Deviation; provided that the Prepetition Collateral Agent or the Required Holders may authorize the Debtor in writing to exceed the Disbursements Permitted Deviation for any Budget Test Period. Simultaneously with the delivery of a Proposed Budget, the Debtor shall deliver a bi-weekly Reconciliation Report to counsel to the Prepetition Collateral Agent and the Required Holders in substantially the same form the Debtor was required to deliver to the DIP Administrative Agent under the DIP Loan Agreement prior to the Maturity Date. In addition, the Debtor shall notify the Prepetition Collateral Agent and the Required Holders as soon as

reasonably practicable if the Debtor anticipates that it will violate the Disbursements Permitted Deviation in any respect for any Budget Test Period.

        b.      Except as provided in this Second Stipulation, or as approved by the Prepetition Collateral Agent or the Required Holders, or in connection with a confirmed Chapter 11 plan, the Debtor shall not, directly or indirectly, (a) use any Cash Collateral in a manner or for a purpose other than those consistent with this Second Stipulation; or (b) permit a disbursement causing any deviation from the Cash Collateral Budget other than a Disbursements Permitted Deviation.

    8.    **Termination of Use of Cash Collateral; Remedies**.  Subject to the terms and conditions set forth in this Second Stipulation, the Debtor is authorized to use the Cash Collateral in the amounts set forth in the initial Cash Collateral Budget and each subsequent approved Cash Collateral Budget, subject to Disbursements Permitted Deviation, through the Termination Date. Following five (5) Business Days' notice of a default by the Debtor of its obligations under this Second Stipulation or the Final DIP Order (as modified hereby) to the Debtor, the Committee, and the Office of the U.S. Trustee and continuing during the pendency of such default, unless such default is cured within such five (5) Business Day period or an order of the Bankruptcy Court is entered to the contrary, the Debtor shall have no right to use or seek to use any Cash Collateral.

    9.    **Effect of Stipulation**.  Except as expressly provided in the First Stipulation and this Second Stipulation, the Final DIP Order remains unchanged and in full force and effect subject to provisions thereof affected by the occurrence of the Maturity Date.

    10.    **Amendments**.  This Second Stipulation may not be amended or modified other than by a signed writing executed by the Parties or by further order of the Court.

11. **Effectiveness**.  Immediately upon approval by the Court, this Second Stipulation shall be deemed effective as of December 1, 2018.

12. **Governing Law**.  This Second Stipulation shall be governed by and construed and enforced in accordance with the laws of the state of New York, without regard to conflicts of law principles thereof.

13. **Jurisdiction**.  The Court shall retain jurisdiction to hear and determine all matters arising from or related to the construction, performance, enforcement or implementation of the terms of this Second Stipulation and the Order.

14. **Counterparts**.  This Second Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  A signature transmitted by facsimile or email .pdf shall be deemed an original signature for purposes of this Second Stipulation.

[*Signature Pages Follow*]

**IN WITNESS WHEREOF** and in agreement herewith, subject to approval by the Court, the Parties, by and through their undersigned counsel, have executed and delivered this Second Stipulation as of the date first set forth below.

Dated:   January 16, 2019

| | |
|---|---|
| **MORRIS, NICHOLS, ARSHT & TUNNELL LLP** | **WHITEFORD, TAYLOR & PRESTON LLC** |
| */s/ Robert J. Dehney* <br> Robert J. Dehney (No. 3578) <br> Andrew R. Remming (No. 5120) <br> 1201 N. Market Street, 16th Floor <br> P.O. Box 1347 <br> Wilmington, Delaware 19899-1347 <br> Telephone: (302) 658-9200 <br> Facsimile: (302) 658-3989 <br> Email: rdehney@mnat.com <br>         aremming@mnat.com | */s/ Christopher M. Samis* <br> Christopher M. Samis (No. 4909) <br> L. Katherine Good (No. 5101) <br> Aaron H. Stulman (No. 5807) <br> The Renaissance Centre <br> 405 North King Street, Suite 500 <br> Wilmington, Delaware 19801 <br> Telephone:  (302) 353-4144 <br> Facsimile:   (302) 661-7950 <br> Email: csamis@wtplaw.com <br>         kgood@wtplaw.com <br>         astulman@wtplaw.com |
| - and - | -and- |
| **HOGAN LOVELLS US LLP** <br> Christopher R. Donoho, III <br> Christopher R. Bryant <br> John D. Beck <br> 875 Third Avenue <br> New York, New York 1002 <br> Telephone: (212) 918-3000 <br> Facsimile: (212) 918-3100 <br> Email: chris.donoho@hoganlovells.com <br>         chris.bryant@hoganlovells.com <br>         john.beck@hoganlovells.com | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** <br> Eric Winston <br> Bennett Murphy <br> 865 S. Figueroa Street, 10th Floor <br> Los Angeles, California 90017 <br> Telephone:  (213) 443-3000 <br> Facsimile:   (213) 443-3100 <br> Email: ericwinston@quinnemanuel.com <br>         bennettmurphy@quinnemanuel.com |
| *Counsel to the Debtor and Debtor in Possession* | *Counsel to the Required Holders* |

*/s/ Benjamin D. Feder*
**KELLEY DRYE & WARREN LLP**
James Carr
Benjamin D. Feder
101 Park Avenue
New York, NY 10178.
Telephone:   (212) 808-7800
Facsimile:   (212) 808-7897
Email: bfeder@kelleydrye.com
          pbruzzese-szczygiel@kelleydrye.com
          jcarr@kelleydrye.com

*Counsel to the Trustee and Prepetition Collateral Agent*


**ACKNOWLEDGED AND AGREED:**

**ELLIOTT GREENLEAF, P.C.**

*/s/ Eric M. Sutty*
Rafael X. Zahralddin-Aravena (No. 4166)
Eric M. Sutty (No. 4007)
1105 N. Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email:   rxza@elliottgreenleaf.com
         ems@elliottgreenleaf.com
-and-

**IRELL & MANELLA LLP**
Jeffrey M. Reisner
Michael H. Strub, Jr.
Kerri A. Lyman
840 Newport Center Drive, Suite 400
Newport Beach, California 92660
Telephone: (949) 760-5242
Facsimile: (949) 760-5242
Email:   jreisner@irell.com
         mstrub@irell.com
         klyman@irell.com

*Counsel to the Committee*

## Exhibit A

**Cash Collateral Budget**

Draft - Subject to Material Change

**Orexigen Therapeutics, Inc.**
**Wind Down Cash Flow Forecast**
Assumes February 28, 2019 Effective Date
*$ in 000's*

| Period Ended | Wind Down Forecast 1/2 - 1/11/2019 | Wind Down Forecast 1/25/2019 | Wind Down Forecast 2/8/2019 | Wind Down Forecast 2/22/2019 | Wind Down Forecast 3/1/2019 | Terminal / Contingency Forecast | Wind Down Forecast TOTAL |
|---|---|---|---|---|---|---|---|
| **Total Receipts** | | | | | | | |
| Holdback of Sales Price Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other Receipts | - | - | - | - | - | 50 | 50 |
| **Total Receipts** | - | - | - | - | - | 50 | 50 |
| | | | | | | | |
| **Pre-Close Expense Disbursements** | | | | | | | |
| Pre-Close Admin Expenses | $ - | $ (105) | $ - | $ - | $ - | $ (1,231) | $ (1,336) |
| Taxes and Regulatory Claims Pending Resolution | - | - | - | - | - | (380) | (380) |
| Pre-Close Professional Fees | - | - | - | - | - | - | - |
| Pre-Close Committee Professional Fees[(1)] | - | - | (236) | - | - | - | (236) |
| **Total Pre-Close Expense Disbursements** | - | (105) | (236) | - | - | (1,611) | (1,952) |
| | | | | | | | |
| **Post-Close Expense Disbursements** | | | | | | | |
| Post-Close Estate Operating Expenses | - | (55) | - | - | - | (864) | (919) |
| Post-Close Professional Fees | - | (262) | (128) | - | - | (1,648) | (2,037) |
| Post-Close Committee Professional Fees[(1)] | - | (71) | (29) | - | - | (233) | (333) |
| **Total Post-Close Expense Disbursements** | - | (388) | (157) | - | - | (2,744) | (3,288) |
| | | | | | | | |
| **Funds to be Reserved** | | | | | | | |
| July 27th Receipts | - | - | - | - | - | - | - |
| UCC Settlement | - | - | - | - | - | (2,000) | (2,000) |
| Litigation Reserve | - | - | - | - | - | - | - |
| **Total Funds to be Reserved** | - | - | - | - | - | (2,000) | (2,000) |
| | | | | | | | |
| **Subtotal Disbursements** | - | (493) | (393) | - | - | (6,355) | (7,240) |
| | | | | | | | |
| **Additional Receipts/(Disbursements)** | | | | | | | |
| Employee Services TSA | - | - | - | - | - | (80) | (80) |
| Expenses to be Reimbursed by the Buyer | - | - | - | - | - | - | - |
| Reimbursements from the Purchaser | - | - | - | - | - | - | - |
| Operating Receipts Reimbursements to Purchaser | - | - | - | - | - | - | - |
| Lender Professional Fees | - | - | - | - | - | (554) | (554) |
| **Total Additional Receipts/(Disbursements)** | - | - | - | - | - | (634) | (634) |
| | | | | | | | |
| **Net Cash Flow** | $ - | $ (493) | $ (393) | $ - | $ - | $ (6,939) | $ (7,824) |
| | | | | | | | |
| Beginning Cash Balance | 26,926 | 26,926 | 26,434 | 26,041 | 26,041 | 26,041 | 26,926 |
| Net Cash Flow | - | (493) | (393) | - | - | (6,939) | (7,824) |
| **Ending Estate Cash Balance** | $ 26,926 | $ 26,434 | $ 26,041 | $ 26,041 | $ 26,041 | $ 19,102 | $ 19,102 |
| | | | | | | | |
| July 27th Receipts | - | - | - | - | - | - | - |
| | | | | | | | |
| **Ending Total Cash Balance** | $ 26,926 | $ 26,434 | $ 26,041 | $ 26,041 | $ 26,041 | $ 19,102 | $ 19,102 |

**Notes**
(1) The Committee Professional Fees have been forecasted at the amounts included in the filed Fee Applications. The Debtor and Prepetition Secured Parties reserve all rights in connection with these fees to the extent such fees exceed the agreed amounts set forth in the Final DIP Order (including the Carve-Out) and prior Budgets approved in connection therewith ("Reserved Fees"), and the inclusion of the Reserved Fees in this Budget is not, and shall not be deemed to be, authorization on the part of the Prepetition Secured Parties to the Debtor to pay any or all of the Reserved Fees. The Committee and its professionals reserve all rights with respect to the Reserved Fees.

Privileged and Confidential